IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE CO., | CV 20–116–GF–DLC |
| Plaintiff and Counter-Defendant, | |
| vs. | ORDER |
| GREAT FALLS RESCUE MISSION, | |
| Defendant and Counter-Plaintiff, | |
| and | |
| R.B., S.G., and M.G. | |
| Intervenor-Defendants and Counter-Plaintiffs. | |

Before the Court is Intervenor-Defendants and Counter-Plaintiffs R.B.'s,

S.G.'s, and M.G.'s ("Intervenors") Motion for Judgment on the Pleadings. (Doc.

14.) Based on the pleadings, Intervenors seek judgment on their declaratory

counterclaim that Plaintiff and Counter-Defendant Philadelphia Indemnity

Insurance Company ("PIIC") violated Montana law by exhausting policy limits

through settlement with only one of several injured parties instead of interpleading

available insurance funds. A hearing was held on June 25, 2021. (Doc. 40.) For

the reasons stated herein, the Court will deny the motion.

1

## BACKGROUND

### I.     Factual Background[1]

In June 2016, the Great Falls Rescue Mission sponsored a youth camp. (Doc. 1 at 3–4.)[2]  It is alleged that during the event, a volunteer camp assistant sexually molested several minor-aged girls.  (*Id.* at 3–4.)  At this time, the Great Falls Rescue Mission was insured by two policies issued by PIIC.  (*Id.* at 5.)  Relevant here, is a commercial generally liability policy with a $1,000,000 aggregate limit, which, through an endorsement, specifically covers liability stemming from sexual molestation ("CGL Policy").  (Doc. 1 at 5–7; 13 at 4; 16 at 2.)

In August 2017, one alleged victim, Z.M., sued the Great Falls Rescue Mission for damages stemming from the abuse.  (Docs. 1 at 4; 13 at 6; 16 at 4.)  In response, the Great Falls Rescue Mission tendered a claim to PIIC and PIIC provided a defense.  (Doc. 1 at 4.)  This case was prosecuted in state court and on May 6, 2019, shortly before trial, counsel for the Great Falls Rescue Mission demanded that PIIC settle Z.M.'s lawsuit for the CGL Policy's limit of $1,000,000.

---

[1] Because this matter comes before the Court on a motion for judgment on the pleadings, the Court derives this background by taking the allegations in PIIC's complaint as true and treating the allegations in Intervenors' complaint that have been denied as false.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  The Court also relies on documents attached to the moving and non-moving parties' pleadings, because such documents are "part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

[2] PIIC's complaint dates the underlying events in June 2018 (Doc. 1 at 3), but it and Intervenors agree this is an error and the events actually occurred in June 2016.  (Docs. 15 at 3; 17 at 2.)

(*Id.* at 11; *see also* Doc. 1-1.)

Counsel for PIIC responded to this demand by notifying the Great Falls Rescue Mission that, in its view, if it were to tender policy limits to settle Z.M.'s lawsuit, the CGL Policy would likely not provide any additional coverage or defense "as to any subsequent claims . . . by individuals who do or may contend that they suffered abuse or damages as a result of the actions by the same individual raised in this claim." (Doc. 1-2 at 1.) Great Falls Rescue Mission's counsel responded that the organization had given "careful consideration to making its demand" and reiterated its request that PIIC settle Z.M.'s lawsuit for the CGL Policy's limits. (*Id.*)

Based on the foregoing, PIIC tendered the CGL Policy's $1,000,000 limit and settled Z.M.'s lawsuit. (Doc. 1 at 5.) Prior to tendering limits to settle Z.M.'s lawsuit, PIIC was aware there were potentially other claimants who were also abused, but the parties agree none of these other claimants had put PIIC on notice of a claim.[3] (Doc. 1 at 4.) Despite the existence of multiple potential claimants, no interpleader action was ever filed by PIIC prior to settling Z.M.'s lawsuit. (Doc. 13 at 6–7; 16 at 4.) Following the settling of Z.M.'s lawsuit through payment of policy limits, Intervenors asserted claims against the Great Falls Rescue Mission

---

[3] As discussed at the hearing, the Court views the term "claim" broadly to encompass any action designed to put PIIC on notice that they intended to seek coverage under the CGL Policy.

3

based on events occurring in June 2016.  (Doc. 1 at 5.)

## II.    Procedural Background

Because Intervenors seek judgment on the pleadings, it is necessary to address the claims at issue in this case.  PIIC commenced this action against the Great Falls Rescue Mission on December 7, 2020, alleging that following its exhaustion of policy limits in settlement of Z.M.'s lawsuit, "four additional" parties had come forward and asserted claims against the CGL Policy.  (Doc. 1 at 5.)  Accordingly, PIIC seeks a declaration that, among other things, it has no duty to defend Great Falls Rescue Mission against these new claims and that the CGL Policy's limits have been exhausted.  (*Id.* at 9–10.)

Intervenors were subsequently permitted to enter this action as defendants. (Doc. 9.)  Upon intervening as a defendant, Intervenors answered PIIC's complaint and asserted several declaratory counterclaims.  (*See generally* Doc. 13.)  Relevant here, Intervenors seek a declaration that: (1) PIIC "violated its duties to Intervenors under Montana law by failing to follow Montana's interpleader rule and exhausting the entirety of its aggregate policy by paying one of several similarly-situated claimants;" (2) PIIC "is estopped from asserting that the policy limits applicable to Intervenors' claims are exhausted;" and (3) each Intervenor is "entitled to up to $1,000,000 under the subject policies."  (*Id.* at 9–10.)  The Great Falls Rescue Mission has also answered PIIC's complaint and asserted several counterclaims.

(*See generally* Doc. 19.)

**STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is a decision on the merits," *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1357 (9th Cir. 1990), and is only "properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

As noted above, in adjudicating a motion for judgment on the pleadings, this Court accepts as true all "allegations of fact by the party opposing the motion" and construes them "in the light most favorable to that party." *General Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Accordingly, when a party moves for judgment on the pleadings as to their own claim, the motion will be denied if "the answer raises issues of fact that, if proved, would defeat recovery." *Id.* Moreover, "if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* Applying the foregoing principles, the Court concludes judgment on the pleadings is unwarranted.

The central issue presented by Intervenors' motion for judgment on the pleadings is whether PIIC flouted the duties owed to them under Montana law by failing to interplead policy limits before exhausting such limits through settlement of Z.M.'s lawsuit.[4]  Intervenors argue that it did, and that, as relief, this Court should apply equitable principles to permit them each to pursue up to $1,000,000 in coverage from PIIC.  Predictably, PIIC disagrees, arguing that Intervenors lack standing, or alternatively, that their claims are unripe, that it owed no duties to Intervenors under Montana law, and that even if it did, it had no obligation to interplead prior to settling Z.M's lawsuit.  Because issues of standing and ripeness implicate this Court's subject matter jurisdiction, it will address them first.

## I.  Standing and Ripeness.

This Court's jurisdiction is limited to actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1.  Two closely related "components of the Article III case or controversy requirement are standing and ripeness."  *Bova v. City of Medford*, 564 F.3d 1093, 1095–96 (9th Cir. 2009).  "Sorting out where standing ends and ripeness begins is not an easy task."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (noting that "because the focus of our ripeness

---

[4] Because this Court is exercising diversity jurisdiction, the substantive law of Montana applies to this question of law.  *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996).

inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline").

Standing is concerned with *who* may sue, while ripeness addresses *when* someone may sue. *Bova*, 564 F.3d at 1096. "The oft-cited *Lujan v. Defenders of Wildlife* case states the three requirements for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Public Lands for the People, Inc. v. U.S. Dept. of Agric.*, 697 F.3d 1192, 1195–96 (9th Cir. 2012). Ripeness generally "coincides squarely with standing's injury in fact prong." *Bova*, 564 F.3d at 1093. "Whether the question is viewed as one of standing or ripeness, the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Thomas*, 220 F.3d at 1139.

PIIC focuses its argument on the first standing element, contending that Intervenors have not suffered an injury in fact because they have not "obtained a judgment or even sued Great Falls Rescue Mission," and "have not even attempted to collect a judgment against Great Falls Rescue Mission" or "proven they are unable to do so." (Doc. 17 at 7.) Intervenors have not provided a direct responsive argument, instead maintaining that they were injured as soon as PIIC settled Z.M.'s lawsuit for policy limits. The Court finds Intervenors' claims ripe for adjudication.

PIIC's argument is sparse on legal authority. Nowhere does PIIC provide the Court with any authority supporting the proposition that a potential claimant against an insured must actually obtain a judgment, or even formally file a lawsuit, before they are able to advance the sort of claim put forward by Intervenors here. The Court finds that the injuries of which Intervenors' complain are not hypothetical or abstract, but definite and concrete. They allege that they, third-party beneficiaries to the CGL Policy, are injured by PIIC's failure to interplead prior to exhausting the policy's limits in settlement of Z.M.'s lawsuit. And the pleadings establish that PIIC did in fact fail to interplead funds.

It is unavailing that Intervenors may not *actually* have valid claims against PIIC because of a failure to interplead or even against the Great Falls Rescue Mission. *Catholic League for Religious and Civil Rights v. City and Cty. of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010) (en banc) (holding a "standing analysis which prevents a claim from being adjudicated for lack of jurisdiction, [cannot] be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true"). Taking their claims, as alleged, Intervenors have plausibly pled an injury in fact by virtue of PIIC's failure to interplead. In short, Intervenors' have standing, and their claims are ripe. Having resolved this threshold issue, the Court turns its attention to the merits of the legal contentions raised by Intervenors' motion.

## II.    The Duties Owed by PIIC.

As repeated already at length, Intervenors maintain that PIIC violated the duties it owed to them under Montana law by failing to interplead the CGL Policy's limits prior to settling with Z.M.  (Doc. 15 at 7.)  Intervenor's argument relies nearly exclusively on *Associated Dermatology and Skin Cancer Clinic of Helena, P.C. Profit Sharing Plan and Trust for the Benefit of Stephen D. Behlmer, M.D. v. Fitte*, 388 P.3d 632 (Mont. 2016).  Intervenors read this case as imposing an affirmative obligation on insurers to file an interpleader action when there are multiple possible claimants who may compete for scarce policy coverage.  (Doc. 15 at 7–10.)  PIIC disagrees.

Under PIIC's view, at the time it settled Z.M.'s  lawsuit, Intervenors had not yet submitted claims against the Great Falls Rescue Mission or the CGL Policy, and, as such, it did not owe them any duties under Montana law.  (Doc. 17 at 8–9.)  Moreover, PIIC contends that even if duties were owed, such duties were not breached because Montana law does not require insurers to initiate an interpleader action.  (*Id.* at 9–11.)  Upon examining the applicable authority, the Court agrees with PIIC and finds Intervenor's arguments unavailing.

The Court begins by outlining an insurer's duties under Montana law.  The "existence of a duty is a question of law for determination by the court." *Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1177 (Mont. 2014).  In general, an insurer

may owe duties to either its insured or an injured third party. The Court will focus on the latter in this case because the pleadings establish Intervenors were not PIIC's insured at the time of the events in question. *See O'Fallon v. Farmers Ins. Exch.*, 859 P.2d 1008, 1013 (Mont. 1993) (noting that persons are properly classified as "third parties" in the insurance context when they purport to have been "damaged by an insurance company's conduct but have no contractual relationship to that company").

In Montana, an insurer's legal obligations to a third party may arise from either statute or common law. As a statutory matter, an insurer's obligations to third parties predominately arise under Montana's Unfair Trade Practices Act ("UTPA"). *See generally* Mont. Code Ann. §§ 33-18-101 et seq. But the Court need not concern itself with those statutes because, although Intervenors' briefing makes passing mention to the UTPA (*see*, *e.g.*, Doc. 15 at 8), counsel conceded at the hearing that they are not asserting PIIC owed them any duties under those statutes. Accordingly, the Court turns its attention Montana's common law.

Without a doubt, and as mentioned above, the obligations of an insurer may derive not only from statute, but also from Montana's common law. *See, e.g., White v. State ex rel. Mont. State Fund*, 305 P.3d 795, 801–02 (Mont. 2013) (recognizing common law duties owed by insurers independent of the insurance code or contract); *see also Birkenbuel v. Montana State Comp. Ins. Fund*, 687 P.2d

700, 702 (Mont. 1984) (same). Intervenors maintain that under the Montana

Supreme Court's decision in *Fitte*, PIIC had a common law obligation to interplead

the CGL Policy's limits prior to settling with Z.M. because it was aware of several

additional injured parties who may assert a claim at some hypothetical point in the

future.

In *Fitte* an insured individual (Fitte) started a fire which "got out of control"

and damaged the property of "approximately thirty-five" of his neighbors. 388

P.3d at 634. Two of his neighbors quickly sued him. *Id.* In response, Fitte

submitted a claim on two of his insurance policies, with the insurer accepting

coverage under one and contesting coverage under the other. *Id.* "Realizing the

extent of damage and the potential number of claimants affected," the insurer filed

an interpleader action and moved to deposit limits of $300,000 under the

uncontested policy. *Id.* Notably, "[n]ot wanting to require each claimant to pay an

appearance fee or retain counsel," only Fitte was named as a defendant to the

interpleader action. *Id.*

Following the initiation of the interpleader proceeding, the two neighbors

who sued obtained judgments against Fitte for $500,000 and $1,900,000,

respectively. *Id.* at 635. The dispute between Fitte and his insurer regarding the

contested policy was resolved in Fitte's favor and the insurer sought to deposit the

policy's limits of $1,000,000 in the interpleader action. *Id.* The two prevailing

neighbors then attempted to attach the $1,000,000 policy limits and prevent its inclusion as available interpleader proceeds.  *Id.*  The Montana Supreme Court affirmed the district court's refusal to recognize the neighbor's attachment, holding that "the interpleader action was intended to distribute all available insurance proceeds and that the res, which was the object of the interpleader, was 'all available insurance proceeds.'"  *Id.* at 637–38.  Because the interpleader action was filed before either of the neighbors' judgments arose, the $1,000,000 was properly distributed only through the interpleader action.  *Id.* at 638.

Because the central question in *Fitte*—whether the insurer's filing of an interpleader action prevented the two prevailing neighbors from attaching the $1,000,000 insurance proceeds—is markedly different from the question presented by Intervenor's motion——whether PIIC had a duty to interplead—Intervenors place significant reliance on the case's dictum.  Ultimately, the Court finds that even if *Fitte*'s dictum was sufficient to establish a duty, *Fitte* cannot reasonably be construed to create a common law duty to interplead.

In resolving *Fitte*'s central question the Montana Supreme Court provided general commentary regarding the nature and purpose of interpleader actions.  For example, the *Fitte* Court began its analysis by noting that interpleader is an equitable action and "a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund."  *Id.* at 636.  The

Court also framed interpleader actions as designed to benefit insurers "from the expense of defending" against multiple liability actions. *Id.* (repeatedly describing interpleader as a right afforded to those frequently in the position of insurers).

The Court also noted the benefits interpleader actions afford claimants by preventing a race to judgment. *Id.* at 636–37. For example, the *Fitte* Court noted that "difficulties such [as] a rush to judgment may pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." *Id.* at 636 (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967)). The Court added that, in Montana at least, "interpleader is an equitable remedial device that exists in order to avoid the unfairness that may result to some claimants who have competing claims to the interpleader res, but who lose the 'race to judgment.'" *Id.* at 637. Construing an insurer's duty under UTPA, the Court concluded that Fitte's insurer, by interpleading, "was properly availing itself of the procedure" the Montana Supreme Court "has determined an insurer should utilize." *Id.*

The foregoing is the sum total of available insight from *Fitte* upon which Intervenors urge this Court to derive a common law duty to interplead available insurance funds when there are multiple *possible* claimants. The Court declines to do so. At best, *Fitte* can be read as an endorsement of the use of interpleader actions in situations where an insurer anticipates it will be confronted with multiple

competing claims for limited policy coverage. Indeed, the Montana Supreme Court repeatedly emphasized in *Fitte* that interpleader is simply an equitable tool available to insurance companies should they wish to avoid expending funds in the defense of multiple claims advanced against their insured. In sum, the Court concludes it would stretch *Fitte* too far to conclude it establishes a common law duty to interplead under the circumstances of this case.

Other principles regarding the conduct of insurers fortifies the conclusion that PIIC was not legally obligated to interplead in this situation. For one, Montana law does not ordinarily impose duties on an insured as to third parties until the third party actually submits a claim, something Intervenors admit they did not do here. *McNeil v. Currie*, 830 P.2d 1241, 1246 (Mont. 1992) (holding the UTPA only governs situations in which a claim is actually submitted to an insured); *see also Thomas v. Northwestern Nat. Ins. Co.*, 973 P.2d 804, 809 (Mont. 1998).[5] And it is well established, as PIIC points out, that insurers have no obligation under Montana law to solicit claims from those who may possibly have a claim. *Wassberg v. Anaconda Copper Co.*, 697 P.2d 909, 915 (Mont. 1985);

_____

[5] To be fair, these cases address when the duties of an insurer are triggered under the UTPA *as to their insured*. But the Montana Supreme Court has extended such duties to third parties in certain circumstances. *See, e.g., Shilhanek v. D-2 Trucking, Inc.*, 70 P.3d 721, 724–25 (Mont. 2003) (noting that under Montana Code Annotated § 33-18-201(6), (13) an insurer must "pay an injured third party's medical expenses before final settlement when liability is reasonably clear"). The Court finds no reason to conclude that the claim submission requirement should operate differently under Montana law in the context of injured third parties.

*Stuart v. State Farm Mut. Auto. Ins. Co.*, 27 Mont. F. 453, 458 (D. Mont. 2000).

Intervenor's reading of *Fitte* is in tension with these well-established principles by

mandating that insurers owe duties to third parties irrespective of a claim and

obligating them to sue those third parties in interpleader, thus inviting them to

pursue a claim they otherwise may not have brought.

Intervenors argument that Judge Lynch's decision in *Coleman Const., Inc. v.*

*Diamond State Ins. Co.*, 2008 WL 2357365 (D. Mont. 2008) alters these principles

and supports a different outcome in this case is unpersuasive.  In *Coleman*, "a fire

broke out in a mobile home owned by Beverly Kudrna and occupied by her tenant,

Chuck Sundstrom."  *Id.* at *1.  Kudrna submitted a claim to her insurer, Diamond

State, and it began investigating the origin of the fire.  *Id.*  Throughout the

investigation, Diamond State was made aware that the Coleman's property had

also been damaged in the fire, but because they had not submitted a claim, it

declined to investigate the precise cause of such damage.  *Id.*  Prior to receiving a

formal claim from the Colemans, Diamond State completed its investigation into

Kudrna's claim and "authorized a cleanup of the fire site and disposal of debris."

*Id.*

The Colemans then submitted their claim and eventually sued Diamond

State arguing it committed the tort of spoilation of evidence by failing to preserve

and actively disposing of the evidence at the fire site.  *Id.* at *2.  After noting that

one of the elements of this tort is a legal duty to preserve evidence, Judge Lynch concluded that under the circumstances of the case, Diamond State owed the Colemans a duty to preserve the evidence at the fire site. *Id.* at *3–8. Judge Lynch began by rejecting the notion that the duty could arise under the UTPA because, as this Court previously explained above, such duties do not arise until a claim is actually made. *Id.* at *4. In reaching a contrary conclusion as a matter of common law, Judge Lynch concluded that foreseeability and public policy considerations established a duty under Montana law to preserve the evidence within the fire site. *Id.* at *6–9. The Court finds *Coleman* distinguishable from the facts of this case.

First, *Coleman* arises in the tort context. As such, Judge Lynch's foreseeability and public policy analysis is driven almost exclusively by cases arising under the umbrella of negligence law. *Id.* These principles do not neatly translate to this declaratory judgment action invoking insurance law principles. Second, the circumstances in *Coleman* are markedly different from the circumstances here. In *Coleman*, Judge Lynch sought to fashion a rule that would prevent insurers from being able to quickly dispose of evidence in order to thwart third party attempts to claim a portion of available insurance proceeds or even advance a claim against the responsible party altogether. *Id.* at *8. In other words, the *Coleman*'s holding prevents insurers from destroying evidence prior to the point at which a third party may even know their property has been damaged, and

therefore, obstructing their ability to assert a claim in the first place. *Id.* That is a sensible rule.

The rule Intervenors draw from *Fitte* and *Coleman* paints much more broadly. In their view, *Fitte* and *Coleman* can be read to require insurers to presume injured third parties will come after available insurance proceeds and respond by suing all possible third party claimants in an interpleader action rather than adjudicating the claims that have already been advanced. And in this case, that would include parties who have not asserted claims after almost three years since the incident possibly giving rise to the claim.[6]

Moreover, *Coleman* prevents insurers from destroying evidence so that an injured third party cannot successfully assert a claim against their insured, whether that claim is or is not covered by the insurer. Intervenors seek to stretch that holding not to protect an injured third party's ability to advance a claim against the responsible parties, but instead to ensure any claim they may have is covered by insurance. Although the Court recognizes that "claimants and their attorneys usually don't like to go after an empty barrel" and expend the "time and effort and anxiety" only to end up with a "judgment [that] is not collectible," *McNally v.*

---

[6] The Court recognizes, of course, that Intervenors are minor-aged children who could likely rely on Montana Code Annotated § 27-2-216 to advance a tort claim against the perpetrator or the Great Falls Rescue Mission until they are 27 years old. But the Court is not holding that Intervenors cannot advance a claim against the responsible parties, it is interpreting the legality of PIIC's conduct in settling Z.M.'s lawsuit.

*Nationwide Ins. Co.*, 815 F.2d 254, 262–63 (3d Cir. 1987), the Court cannot stretch the law to ensure parties do not end up with an empty judgment. The law, as a general matter, does not entitle one to have an actionable claim covered by insurance.

To be sure, PIIC *could* have elected to interplead policy limits instead of settling Z.M.'s lawsuit. But it is understandable why it did not. Indeed, PIIC was in a difficult situation. Its insured was demanding it exhaust policy limits in settlement of the only claim that had been asserted in order to avoid a rapidly approaching and publicly damaging trial. By interpleading instead of settling with Z.M., PIIC would have been expressly ignoring the desires of its insured, which held steadfast even after being told that no additional insurance coverage would be available if other injured parties came forward. It additionally would have had to affirmatively sue the prospective claimants, thereby burdening them with litigation expenses, and inviting them to assert claims against its insured they may have not otherwise advanced.

It is hard to see how interpleading in this situation would have comported with the duties PIIC owed to the Great Falls Rescue Mission at the time Z.M.'s lawsuit was settled. Montana law recognizes "the dilemma [often] faced by insurers in balancing its duties to both its insured and to injured third-party claimants." *High Country Paving, Inc. v. United Fire & Cas. Co.*, 454 P.3d 1210,

1213 (Mont. 2019). And here PIIC undoubtedly owed the Great Falls Rescue Mission a duty under the UTPA to "effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." *Id.* (citing Mont. Code Ann. § 33-18-201(6)). The Court agrees with PIIC that it would have been legally perilous to disregard this clear statutory mandate in order to fulfill a duty to persons who had not even yet submitted claims. *Gibson v. Western Fire Ins. Co.*, 682 P.2d 725, 730 (Mont. 1984) ("In determining whether to settle, the insurer must give the insured's interest as much consideration as it gives its own interest").

To summarize, the Court rejects Intervenors argument that Montana's common law imposes a duty on an insurer to interplead available insurance funds when there are multiple potential claimants who may or may not eventually assert a claim. Such a major change to Montana's law regarding an insurer's use of interpleader actions is best left to the legislature. *Ogden v. Montana Power Co.*, 747 P.2d 201, 205 (Mont. 1987) (noting that while "judicial modification of the common law is sometimes required to prevent great injustice . . . sudden major change[s]" are "best done by legislative enactment"). Having concluded that PIIC did not breach any duties owed to Intervenors under Montana law, the Court need not address whether it should apply equitable principles to permit each claimant to obtain $1,000,000 under the CGL Policy.

Accordingly, IT IS ORDERED that the motion (Doc. 14) is DENIED.

DATED this 12th day of July, 2021.

Dana L. Christensen, District Judge
United States District Court